**Alexander MICKLE, Plaintiff,**

v.

**Ramzi Radhwn AHMED, Hafez Muharan, and Jason Gamba, Defendants.**

**C.A. No. 9:05–0867–PMD.**

United States District Court,
D. South Carolina,
Beaufort Division.

July 10, 2006.

Alexander Mickle, Columbia, SC, pro se.

Elloree A. Ganes, Robert H. Hood, Jr., Hood Law Firm, Charleston, SC, for Defendant Jason Gamba.

## OPINION AND ORDER

DUFFY, District Judge.

This matter is before the court upon *pro se* Plaintiff Alexander Mickle's ("Mickle" or "Plaintiff") objections to the United States Magistrate Judge's Report and Recommendations ("R & R") of April 21, 2006, regarding Plaintiff's action pursuant to 42 U.S.C. § 1983. The Magistrate Judge recommends that the Court (1) relieve Defendants Ahmed and Muharan of default judgments entered against them, (2) dismiss Plaintiff's case against Defendants Ahmed and Muharan, (3) deny Plaintiff's motion to execute default judgments, (4) deem moot Defendant Gamba's motion to dismiss, and (5) grant Defendant Gamba's motion for summary judgment. (R & R at 15.) The record contains the R & R which was made in accord with 28 U.S.C. § 636(b)(1)(B).

A party may object in writing to the R & R within ten days after being served with a copy of the report. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). Plaintiff filed timely written objections to the R & R on May 4, 2006.

## I. BACKGROUND

The facts, either undisputed or taken in a light most favorable to Plaintiff as the nonmoving party, are as follows:

Mickle is an inmate in the custody of the South Carolina Department of Corrections. On March 10, 2005, Mickle filed a § 1983 complaint alleging Defendants violated his Constitutional rights by using excessive force to secure his arrest on March 22, 2003. Plaintiff also claims Defendants committed acts of police brutality, assault, and battery against him during the arrest. Plaintiff seeks general damages of $100,000, unspecified punitive damages, and unspecified injunctive relief.

On March 22, 2003, at 2:21 A.M., Defendant Ramzi Radhwn Ahmed ("Ahmed") called 911 to report a disturbance in process at the residence he shares with Defendant Hafez Muharan ("Muharan"). (NCPD Inc. Rpt., Mar. 22, 2003.) Defendant Jason Gamba, acting in his capacity as a North Charleston police officer, responded to the call. (Inc.Rpt.)

Ahmed and Muharan independently made statements at the scene reporting they were returning home when they noticed a man moving items inside a car parked near their apartment. (NCPD Victim States., Mar. 22, 2003.) They also noticed the door to their apartment was open. As they passed the parked car, they realized Plaintiff was loading their possessions into his car. When they confronted Plaintiff, he attempted to drive away. Ahmed stopped him by reaching inside the car and grabbing the keys, while Muharan called the police. Plaintiff carried the items back into Defendants' apartment, but they refused to return his keys until the police had arrived. Officer Gamba reached the scene and told Plaintiff to go with him to the patrol car for questioning. (Vic.States.)

Because Mickle appeared nervous and was repeatedly moving his hands toward his pockets as they walked to the officer's car, Gamba conducted a protective pat down for weapons. (Inc.Rpt.) The written statements of Gamba, Mickle, Ahmed, and Muharan diverge at this point.[1] Each account agrees (1) a struggle broke out between Officer Gamba and Plaintiff; (2) Plaintiff pulled a tire iron from his pocket; and (3) Ahmed and Muharan rushed over to help Gamba restrain Plaintiff. (Inc. Rpt.)

Gamba states he warned Plaintiff several times he "would deploy the K-9" if he continued to resist arrest. After telling Ahmed and Muharan to move away, Gamba released the K-9. The police dog engaged Mickle, who began striking the dog. After handcuffing Plaintiff, Gamba ordered the K-9 to disengage and he called for backup on Muharan's cell phone. (Inc. Rpt.)

EMS personnel treated Mickle for dog bites at the scene and police transported him to Charleston County Memorial Hospital; at 5:45 A.M., the hospital cleared him for jail and discharged him to the police. (MUSC Pat. Dischg. Instrs., Mar. 22, 2003.)

## II. PROCEDURAL HISTORY

■ On March 10, 2005, Mickle brought a § 1983 action in federal court against Defendants Gamba, Vito K-9,[2] Muharan, and Ahmed, alleging Defendants had violated his constitutional rights under the Eighth and Fourteenth Amendments by using excessive force during his arrest on March 22, 2003. The district court referred the case to the Magistrate Judge for a Report and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff served each Defendant with his complaint.[3] On July 15, 2005, Gamba answered Plaintiff's complaint and filed motions (1) to dismiss pursuant to Rule 12(b)(6), and (2) to make more definite pursuant to Rule 12(e).[4] On November 15, 2005, Gamba re-filed the amended answer to Plaintiff's complaint, first filed on August 15, 2005.[5]

On January 19, 2006, Gamba filed a motion for summary judgment with supporting memorandum pursuant to Rule 56(c).[6] On March 23, 2006, Plaintiff filed a response in opposition to Gamba's motion for summary judgment and submitted photocopies of the wounds the K-9 allegedly inflicted on him during his arrest.

---

1. Gamba states Mickle "pulled a tire iron form the waistband of his pants and raised it." (Inc.Rpt.) Mickle alleges he told Gamba he had a tire iron in his rear pocket and was attacked by Gamba as he "rendered the tire arm." (Pl.'s Compl. ¶ 3.) Ahmed reports Plaintiff pushed the officer; Muharan reports Plaintiff was holding "a crowbar type of wrench behind his back" as Gamba attempted to handcuff him. (Vic.States.)

2. Vito K-9 is not a "person" and, therefore, is not an appropriate Defendant to a § 1983 claim; the K-9 was dismissed from suit on July 8, 2005.

3. Plaintiff served Ahmed on May 5, 2005; Muharan on June 6, 2005; and Gamba on June 27, 2005.

4. On August 8, 2005, Mickle filed a response in opposition to Gamba's motions. On August 15, 2005, Gamba filed a motion to amend his answer; the motion was granted on November 14, 2005.

5. On November 30, 2005, Gamba filed a motion to dismiss, or in the alternative, a substitution of parties. On January 3, 2006, Plaintiff responded in opposition to Gamba's motion.

6. As Mickle is proceeding *pro se*, the court entered a *Roseboro* order on January 23, 2006, advising him to file an adequate response within thirty-four days (34) days. Plaintiff did not respond to the *Roseboro* order, and on March 2, 2006, the Court granted Plaintiff an additional twenty (20) days to respond.

Defendants Ahmed and Muharan did not respond to Plaintiff's complaint. On August 18, 2005, Plaintiff moved for default judgments against each Defendant; these judgments were entered by the Clerk on August 22, 2005. On February 3, 2006, Plaintiff filed a motion to execute the default judgments.

## III. STANDARD OF REVIEW

### A. Report and Recommendations

■ The Magistrate Judge considers the evidence before him and files an R & R with the district court. The recommendations of the Magistrate Judge have no presumptive weight and the responsibility for making a final determination remains with the district court. *Mathews v. Weber,* 423 U.S. 261, 271, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The district court determines *de novo* those portions of the R & R to which Plaintiff specifically objects and may accept, reject, or modify, in whole or in part, the findings and recommendation(s), or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1)(B). Having reviewed the evidence in the record and Plaintiff's objections to the R & R, the district court modifies the R & R analysis and recommends the relief set forth below.

### B. Summary Judgment

"Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(c)).

"[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505. "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict. Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256, 106 S.Ct. 2505.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327, 106 S.Ct. 2548.

## IV. DISCUSSION

### A. § 1983 Civil Rights Claims: Fourth Amendment Excessive Force

 Plaintiff brings his claims in federal court under 42 U.S.C. § 1983, which permits lawsuits for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." To state an action under § 1983, plaintiff's claim "must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir.2006) (citing *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994)). "The first inquiry in any § 1983 suit is to isolate the precise constitutional violation with which [the defendant] is charged." *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (quoting *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).

 In this case, Plaintiff alleges his constitutional rights were violated by Defendants' use of excessive force during his arrest. In the Supreme Court's touchstone case that defined the constitutional standard governing a free citizen's claim that law enforcement officials used exces-sive force in the course of making an arrest, investigatory stop, or other "seizure" of his person, the Court held: "*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham,* 490 U.S. at 395, 109 S.Ct. 1865.

 The Court holds the allegations of a *pro se* plaintiff to less stringent standards than it does formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Thus, while Plaintiff Mickle styles his claims under the Eighth and Fourteenth Amendments, the Court liberally construes his § 1983 claim under the Fourth Amendment.

### B. Plaintiff's Objections to the R & R

As understood by the Court, Mickle objects (1) to the entire R & R. More specifically, Mickle objects (2) to the recommendation to dismiss his case against Defendants Ahmed and Muharan, (3) to the recommendation to set aside default judgments entered against Ahmed and Muharan, (4) to the recommendation to grant summary judgment to Defendant Gamba and to dismiss Gamba's motion to dismiss as moot, and (5) to the finding that Defendants are immune from suit against them.

### 1. Mickle "makes total objection" to the R & R.

Mickle states he objects to the entire R & R. (Pl.'s Objs. at 1–2.) To the extent Mickle is attempting to make a general challenge, a district court need not make a *de novo* review "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982). However, the district court is required to determine *de novo* each of the Plaintiff's specific objections to the Magistrate Judge's factual findings and proposed recommendations. *Id.* The fact that Plaintiff is acting *pro se* encourages the district court to read his objections broadly. *Id.* at 48.

### 2. Mickle objects to the recommendation to dismiss his case against Defendants Ahmed and Muharan.

Under § 1983, Plaintiff's only cognizable claim is that excessive force was used against him during his arrest. Plaintiff alleges that Defendants Ahmed and Muharan are proper § 1983 defendants because they assisted Officer Gamba in restraining him, retrieved Gamba's handcuffs, and allowed him to use their cell phone to call for backup. (Pl.'s Objs. at 1–3.)

The Court agrees with the Magistrate Judge's finding that "the most obvious deficiency [in Plaintiff's complaint] is the lack of any 'state action' in the alleged actions by Defendants Ahmed and Muharan." (R & R at 7.) At the outset, a § 1983 claim must name as proper defendants persons who were acting "under color of law" at the time of the alleged constitutional violation. The Court agrees with the Magistrate Judge's finding that Defendants Ahmed and Muharan were acting as private citizens at the time of Plaintiff's arrest and are improper defendants to a § 1983 action. While Plaintiff accurately states he served each Defendant, service merely gives notice that an action has been commenced; service does not confer jurisdiction upon a court.[7] *See* F.R. Civ. P. 4(c).

Because a § 1983 claim does not lie against private citizens, Plaintiff's § 1983 claims against Defendants Ahmed and Muharan are without merit; and, therefore, the Court accepts the Magistrate Judge's recommendation to dismiss Plaintiff's federal claims against Ahmed and Muharan.

### 3. Mickle objects to the recommendation to set aside default judgments entered against Defendants Ahmed and Muharan.

Plaintiff correctly states that Defendants Ahmed and Muharan did not answer his complaint and contends the Court appropriately entered default judgments against them. (Pl.'s Objs. at 1–3.) However, because the Court has no jurisdiction over these Defendants, it cannot enter judgment against them; therefore, the default judgments are void and must be set aside. *See* F.R. Civ. P. · 55(c), 60(b)(4). Because the Court must set aside Plaintiff's default judgments, the Court must also dismiss, as moot, Mickle's motions to execute the judgments.

### 4. Mickle objects to the recommendation to grant summary judgment to Defendant Gamba and to dismiss Gamba's motion to dismiss as moot.

The Court generously construes Plaintiff's objection to include an objection to

---

**7.** To the extent Plaintiff asserts State law claims against Defendants Ahmed and Muharan, the State of South Carolina, and not this Court, has exclusive jurisdiction over these Defendants.

the grant of summary judgment in Defendant Gamba's favor. Plaintiff "prays the Court[ ] view [his claim of excessive force] in light of medical records and photos which was [sic] presented in [P]laintiff motions.... Plaintiff was not a convicted prisoner during these events. Plaintiff objects to Magistrate reviews [sic] to show motive as 'if' plaintiff was a prisoner." (Pl.'s Objs. at 5.)

Relying on cases that consider the extent of a prisoner's injuries, under an Eighth Amendment analysis of cruel and unusual punishment (R & R at 11–14), the Magistrate Judge concluded: "[I]n light of the de minimis nature of any alleged injury, Plaintiff's excessive force claim is patently without merit. Since Plaintiff sustained no serious or significant injury, his claim is not cognizable under 42 U.S.C. § 1983." (R & R at 12.)

The Supreme Court noted in *Graham:* "[B]ecause [Plaintiff] was not an incarcerated prisoner [at the time of the alleged constitutional violation], 'his complaint of excessive force did not, therefore, arise under the [E]ighth [A]mendment.' " 490 U.S. at 392, n. 3, 109 S.Ct. 1865; *see also Ingraham v. Wright,* 430 U.S. 651, 671, n. 4, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.... [T]he State does not acquire the power to punish[,] with which the Eighth Amendment is concerned[,] until after it has secured a formal adjudication of guilt in accordance with due process of law."); *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) ("The core inquiry for an inmate's Eighth Amendment excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' "). Accordingly, an Eighth Amendment analysis is not relevant to Plaintiff's claims against Defendant Gamba. The Court finds that the Magistrate Judge erred in analyzing Plaintiff's claims of excessive force under the Eighth Amendment.

 Because the Magistrate Judge applied the improper test to a claim of excessive force during arrest, the Court now considers Mickle's § 1983 claim against Gamba solely under a Fourth Amendment analysis of the facts confronting the officer at the time of arrest as required by the Supreme Court in *Graham.* The Fourth Amendment test for excessive force during arrest is "an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397, 109 S.Ct. 1865. Factors include: (1) severity of the crime committed by the suspect, (2) whether the suspect presents an immediate threat to the safety of the police officer or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396, 109 S.Ct. 1865. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Furthermore, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S.Ct. 1865. "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.... [I]ts proper application requires careful attention to the facts and circumstances of each

particular case...." *Id.* at 396, 109 S.Ct. 1865 (internal citations omitted).[8]

In determining if the force applied to an arrestee was objectively reasonable, "[t]he task of [the] court is to put itself into the shoes of the officers at the time the actions took place and to ask whether the actions taken by the officers were objectively unreasonable." *Altman v. City of High Point, N.C.,* 330 F.3d 194, 205 (4th Cir. 2003). In *Altman,* the court held: "[T]he officers committed no unreasonable seizure in violation of the Fourth Amendment. It is important to note that we are not saying the officers' responses in these cases were the best possible responses.... [U]nder the circumstances existing at the time the officers took the actions and in light of the facts known by the officers, their actions were objectively reasonable." *Id.* at 207.

 For Plaintiff's claim to survive summary judgment, the Court must find a genuine factual dispute exists regarding whether Gamba's deployment of the K–9 deprived Plaintiff of his Fourth Amendment right to be free from excessive force during arrest. Accordingly, the Court must determine whether Gamba's decision to deploy the K–9 was "objectively reasonable" under the circumstances he encountered during Mickle's arrest.[9]

In determining if the force used to affect a particular seizure is reasonable under the Fourth Amendment, the Supreme Court recognizes the need to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Robinette v. Barnes,* 854 F.2d 909, 913 (6th Cir.1988) (quoting *U.S. v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)). In *Robinette,* an officer had deployed his K–9 to assist with an arrest and the police dog had inadvertently killed the suspect. In determining whether the officer had used excessive force, the court applied a balancing test and found: (1) the K–9 had not killed a suspect before, (2) there was no evidence the officer intended the suspect to die or suffer serious bodily harm, (3) the officer had not deviated from proper search procedures, (4) the officer had probable cause to believe the suspect posed a risk to his safety and the safety of others, and (5) the officer had warned the suspect the dog would be used if he continued to resist arrest. *Id.* at 912–915. The court held the officer's use of the K–9 did not violate the suspect's Fourth Amendment constitutional right to be free from excessive force during seizure: "[E]ven if we were to conclude that

**8.** Most Supreme Court cases involving § 1983 claims of excessive force during arrest consider whether the police officer's use of *deadly* force was excessive. Those cases address whether the officer's use of *deadly* force constituted a constitutional violation against a fleeing suspect which resulted in the suspect's death, or instead, if the *suspect's act* of fleeing arrest caused his own death. In analyzing whether excessive force was used during arrest, the court applies an "objective reasonableness" standard: The use of *deadly* force to prevent escape is constitutionally reasonable only where "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others.... Where the suspect poses no immediate threat to the officer and no

threat to others, the harm resulting from failure to apprehend him does not justify the use of deadly force to do so.... A police officer may not seize an unarmed, non-dangerous suspect by shooting him dead...." *Tenn. v. Garner,* 471 U.S. 1, 11–12, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

**9.** An officer's use of a K–9 to assist in the arrest of a criminal suspect is generally not considered to be a constitutional violation, even when the K–9's assistance results in the inadvertent death of the suspect. *See generally* William G. Phelps, *Liability, under 42 U.S.C.A. § 1983, for injury inflicted by dogs under control or direction of police,* 102 A.L.R. Fed. 616, 1991 WL 741596 (1991).

the use of a police dog to apprehend a suspected felon constitutes deadly force, the use of such force ... was not unreasonable under the circumstances." *Id.* at 913. The *Robinette* court noted that the use of police dogs can (1) prevent officers from having to resort to deadly force and (2) protect the officers from being subjected to deadly force used against them by suspects attempting to avoid arrest. *Id.* at 914.[10]

Under the facts of this case, presented in the light most favorable to Mickle as the nonmoving party, Officer Gamba's use of the K–9 did not constitute excessive force. Gamba was conducting a protective pat down of Mickle, a burglary suspect, when a fight broke out between them. Under the Fourth Amendment standard of "objective reasonableness," a reasonable officer could conclude Mickle was attempting to avoid arrest. It is undisputed that Mickle was carrying a tire iron at the time of the pat down. A reasonable officer confronted by a suspect with a tire iron in his hand could conclude the suspect posed an immediate threat to his safety and the safety of others in the area. In light of the quickly developing and potentially dangerous circumstances, the Court finds Gamba's decision to use his K–9 to assist in Mickle's arrest was "objectively reasonable" under the circumstances.

Mickle implies that because he "backpeddle[d] while K–9 Vito attacked," the K–9's attack was excessive. (Pl.'s Obj's at 3.) However, it is not objectively reasonable for a K–9 to distinguish between a fleeing suspect and a "backpeddling" suspect. Because Mickle was forcibly resisting arrest, it was objectively reasonable for Gamba to allow the K–9 to hold the suspect until he was securely handcuffed. In a recent Fourth Circuit case analyzing an arrestee's excessive force claim under the Fourth Amendment, the court found it significant that plaintiff admitted "the allegedly excessive force ceased after the officers handcuffed him.... This fact supports the finding that the force used by the officers was that force which was necessary to effect the arrest of an aggressive individual in a rapidly changing environment." *Wilson v. Flynn*, 429 F.3d 465, 469 (4th Cir.2005).

The Court agrees with the *Robinette* Court that police dogs can prevent the necessity of resort to the use of deadly force to apprehend a suspect who resists arrest. The facts indicate Mickle was resisting arrest when Gamba deployed the K–9. Applying the *Graham* test of objective reasonableness, the Court holds that Defendant Gamba's decision to deploy the K–9 was objectively reasonable and did not violate Plaintiff's Fourth Amendment rights. Accordingly, Gamba is entitled to summary judgment regarding Plaintiff's § 1983 claim against him. Summary judgment in Gamba's favor moots all pending motions related to Plaintiff's claims against him.

**5. Mickle objects to the finding that Defendant Gamba is immune from suit.**

The Magistrate Judge found that Defendant Gamba, in his official capacity, is enti-

---

**10.** The only case the Court located that found the use of a K–9 during arrest to be excessive force that rose to the level of a constitutional violation was analyzed under the Fourteenth Amendment, prior to the Supreme Court's holding in *Graham* which required a Fourth Amendment analysis of all excessive force claims related to incidents that occur prior to completion of an arrest. *See Luce v. Hayden*, 598 F.Supp. 1101 (D.Me.1984) (After an officer had gained full control over a restrained suspect, the officer intentionally and maliciously ordered his police dog to attack the suspect. The *Luce* Court applied the Fourteenth Amendment due process test that protects a detainee from for excessive punishment and found that the officer's conduct "shocked the conscience.").

tled to Eleventh Amendment immunity from suit. (R & R at 14–15.) Plaintiff's immunity objections appear related to that finding. (Pl.'s Objs. at 3.)

 Eleventh Amendment Sovereign Immunity is a an affirmative defense that may be raised as a matter of law only by the State and arms-of-the-State. The Supreme Court recently held: "A consequence of the Court's recognition of preratification sovereignty as the source of immunity from suit is that only States and arms of the State possess immunity from suits authorized by federal law." *Northern Ins. Co. of N.Y. v. Chatham County, Ga.,* —— U.S. ——, ——, 126 S.Ct. 1689, 1693, 164 L.Ed.2d 367 (2006). The Supreme Court reaffirmed the rule that "municipalities, unlike States, do not enjoy a constitutionally protected immunity from suit." *Id.* (quoting *Jinks v. Richland County,* 538 U.S. 456, 466, 123 S.Ct. 1667, 155 L.Ed.2d 631 (2003)).

 A municipal police officer does not qualify for Eleventh Amendment immunity. *See Nelson v. Strawn,* 897 F.Supp. 252 (D.S.C.1995) (holding that the Moncks Corner Police Department, and its officers acting in their official capacities, are not shielded from suit by the Eleventh Amendment) (vacated on other grounds); *Thomas v. St. Louis Bd. of Police Commrs.,* 447 F.3d 1082 (8th Cir.2006) (holding that the Eleventh Amendment does not shield the St. Louis Police Department, or its officers, from an arrestee's § 1983 claim, because a municipal police department is not an arm-of-the-State); *see also Northern,* 126 S.Ct. at 1689 (reversing the Eleventh Circuit and holding "residual immunity" does not immunize entities from suit in federal court). Accordingly, the Court finds the Magistrate Judge erred in finding Gamba immune under the Eleventh Amendment from Plaintiff's § 1983 claims. However, such error is harmless because, as the Court has already found, Defendant Gamba did not violate Plaintiff's constitutional rights.

 Plaintiff also objects to "the defense of qualified immunity." (Pl.'s Objs. at 4.) However, before a court considers whether qualified immunity shields an officer from suit in his individual capacity, the Court must find a Constitutional violation has occurred. "Determining whether [ ] public officers are entitled to qualified immunity involves a two-step analysis. A court must first decide 'whether a constitutional right would have been violated on the facts alleged.' ... If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Wilson,* 429 F.3d at 467 (quoting *Saucier v. Katz,* 533 U.S. 194, 200–201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)); (*see also Saucier,* 533 U.S. at 200, 121 S.Ct. 2151) ("A court required to rule upon the qualified immunity issue must consider [the] threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.").

In this case, because the Court finds Defendant Gamba committed no constitutional violation, the Court need not reach the issue of qualified immunity.

## V. CONCLUSION

The Court, having considered the pleadings, the R & R, Plaintiff's objections to the R & R, and the entire record, **ORDERS,** for the foregoing reasons, that Defendant Gamba's Motion for Summary Judgment is **GRANTED,** and Defendant Gamba's Motion to Dismiss is **DISMISSED** as moot. Default Judgments entered against Defendants Ahmed and Muharan are hereby **VACATED** and **SET**

**ASIDE,** and Plaintiff's Motions to Execute Default Judgments against Defendants Ahmed and Muharan are **DISMISSED.** All of Plaintiff's federal claims against Defendants Ahmed and Muharan are hereby **DISMISSED with prejudice.** To the extent that Plaintiff has asserted State law claims, the court declines to exercise jurisdiction over those claims and they are **DISMISSED.**

**AND IT IS SO ORDERED.**

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

KOSKO, United States Magistrate Judge.

### I. INTRODUCTION

The *pro se* Plaintiff, Alexander Mickle ("Plaintiff" or "Mickle") brought this action pursuant to Title 42, United States Code, Section 1983, alleging excessive use of force, assault and battery, and police brutality in connection with his arrest during the early morning hours of March 22, 2003. Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

### II. PRO SE COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) *(per curiam); Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Loe v. Armistead,* 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). Under estab-

lished local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti–Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, Title I, § 104, 110 Stat. 1214, codified at 28 U.S.C. § 2254. This review has been conducted in light of the following precedents: *Denton v. Hernandez,* 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Neitzke v. Williams,* 490 U.S. 319, 324–25, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Nasim v. Warden, Maryland House of Correction,* 64 F.3d 951 (4th Cir.1995) *(en banc), cert. denied,* 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996); *Todd v. Baskerville,* 712 F.2d 70 (4th Cir.1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett,* 174 F.3d 1128 (10th Cir.1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott,* 998 F.2d 411 (7th Cir.1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir.1985), *cert. denied,* 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 729 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a

federal district court. *Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

## III. HISTORY OF THE CASE

The Plaintiff commenced this Section 1983 action on March 10, 2005 [1] against the defendants Ramzi Radhwn Ahmed ("Ahmed"), Hafez Muharan ("Muharan"), and North Charleston Police Officer Jason Gamba ("Officer Gamba"), to recover damages for injuries he suffered during his arrest on March 22, 2003.[2] Officer Gamba was the arresting officer, and Ahmed and Muharan were present at the time of the arrest, having arrived at their residence and discovering it being burglarized by the Plaintiff during the early morning of March 22, 2003. Ahmed and Muharan prevented the Plaintiff from leaving the scene of the crime; Ahmed reached into Plaintiff's car and took his car keys, while Muharan used his cellphone to call the police.[3] Officer Gamba and his K–9, Vito, were dispatched to the residence at 2:21 a. m.[4] Officer Gamba attempted to detain Plaintiff, who pushed Officer Gamba and attempted to escape. According to Ahmed, the struggle continued between Plaintiff and Officer Gamba, and Officer Gamba released K–9 Vito. Both Officer Gamba and K–9 Vito ran after Plaintiff, and K–9 Vito bit Plaintiff on his hand. Ahmed provided a "victim statement" to North Charleston Police which stated in part, "The dog then bit the man on his leg and brought him to the ground. The officer then asked me to get his handcuffs from where he had dropped them by his car. I went to get the hand cuffs and handed them to the officer. The officer then placed man in the cuffs and then released the dog from the bite." [5]

Muharan also provided a "victim statement" to North Charleston Police which corroborated Ahmed's statement and stated that Plaintiff had a crowbar type of wrench behind his back in his hand at the time Officer Gamba was attempting to arrest and handcuff Plaintiff.[6]

Plaintiff was bitten several times by K–9 Vito. Plaintiff was treated by EMS at the scene, and taken to the emergency room for treatment, and released into the custody of a police officer at approximately 5:45 a.m. that morning.[7]

Plaintiff claims that during his arrest by Officer Gamba, Plaintiff was "assaulted, battered, beaten, maul[ed], mutilated, and

---

1. Plaintiff has the benefit of the holding of *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) with respect to the "delivery" date of his Complaint.

2. Initially, Plaintiff also had listed "Vito K–9 Unit Ofc" as a defendant in his Complaint. Plaintiff affirmatively answered the Court's Special Interrogatory question "Is the 'Vito K–9 Ofc.' named as a Defendant in this case a dog?" [4–1] Accordingly, on April 25, 2005, the Honorable Robert S. Carr, United States Magistrate Judge for the District of South Carolina, issued a Report and Recommendation for Partial Summary Dismissal of the canine defendant on the grounds that a dog is not a "person" for purposes of Section 1983, relying upon *Dye v. Wargo*, 253 F.3d 296 (7th Cir.2001).[6–1]. By Order dated July 8, 2005, the Honorable Patrick Michael Duffy, United States District Judge for the District of South Carolina, issued an Order adopting Magistrate Judge Carr's Report and Recommendation. [12–1]

3. *See* Ahmed's Victim Statement, attached to [39–1].

4. *See* Narrative (dispatch sheet) of North Charleston Police Department, attached to [24–1].

5. *See* Ahmed's Victim Statement, attached to [39–1].

6. *See* Muharan's Victim Statement, attached to [39–1].

7. *See* MUSC Patient Discharge Instructions attached to [24–1].

attacked" by Officer Gamba, K–9 Vito, Ahmed, and Muharan. Plaintiff claims that the "unprovoked beating" by Officer Gamba, K–9 Vito, Ahmed, and Muharan on March 22, 2003 violated his "rights and constituted cruel and unusual punishment under the Eight [sic] Amendment." [8] Furthermore, the "unreasoning and unnecessary use of force, bitting [sic], maul" of Plaintiff by Officer Gamba and K–9 Vito and the beating of Plaintiff by Officer Gamba and K–9 Vito "violated the due process clause of the Fourteen [sic] Amendment of the United States Constitution[.]" [9] Plaintiff seeks a judgment declaring that the acts of Officer Gamba and K–9 Vito violated his rights under the Eighth and Fourteenth Amendments, as well as a judgment declaring that the acts of Ahmed and Muharan violated his rights under the Eighth Amendment. Furthermore, Plaintiff seeks general damages in the amount of $100,000.00 from the Defendants as well as an unspecified amount of punitive damages and injunctive relief.[10]

Ahmed was served with Plaintiff's complaint on May 5, 2005[8–1]; Muharan was served on June 6, 2005 [10–1], and Officer Gamba was served on June 27, 2005. [11–1] On July 15, 2005, Officer Gamba answered the Complaint and also filed a Motions pursuant to F.R.C.P. 12(b)(6) and 12(e). [13–1; 14–1] On July 19, 2005, an Order was issued pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975), notifying Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to Officer Gamba's Motion. [15–1]

Plaintiff filed a response in opposition to Officer Gamba's Motion. [18–1] Thereafter, Officer Gamba's employer (the State of South Carolina) retained counsel which filed Notice and Motion to Amend the Answer in order to assert additional affirmative defenses that had not been asserted in Officer Gamba's Answer. [21–1] This Motion was granted on November 14, 2005. [26–1] Meanwhile, Plaintiff moved for default as to the defendants Ahmed and Muharan [22–1] and the Clerk entered default as to Ahmed and Muharan on August 22, 2005. [25–1]

On November 30, 2005 Officer Gamba filed a Motion to Dismiss or in the Alternative Substitution of Parties [29–1] on the grounds that the City of North Charleston Police Department is a state agency as defined by the South Carolina Tort Claims Act and was not liable to Plaintiff because Officer Gamba did not act in a "grossly negligent manner" towards Plaintiff.[11] On December 5, 2005, another Roseboro Order was issued to the Plaintiff. [31–1] On January 3, 2006, Plaintiff filed a Response [32–1] which had attached to it a copy of Officer Gamba's Incident report, which described Plaintiff as resisting arrest, disregarding the warning that the K–9 would be used, running from the scene of the crime, being bitten by the K–9, striking the K–9's muzzle with his fists, and attempting to flee, dragging the K–9 behind him. According to the report, after Plaintiff was handcuffed, Officer Gamba ordered the K–9 to let go of the Plaintiff, the K–9 did so, and Officer Gamba called for back-up. Photographs were taken of Officer Gam-

8. See Complaint [1–1] at p. 4.

9. See Complaint [1–1] at p. 4.

10. See Complaint [1–1] at p. 5.

11. It appears to the court that Plaintiff's action under the SCTCA would be timely under the applicable statute of limitations. Any action brought pursuant to the SCTCA "is forever barred unless an action is commenced within two years after the date of the loss was or should have been discovered[.]" S.C.Code Ann. § 15–78–110. In the case sub judice, Plaintiff filed his Complaint on March 11, 2005, not quite two years after his arrest on March 22, 2003.

ba's police cruiser, which had been damaged from the struggle. Plaintiff was treated on the scene by EMS, and then transported to the hospital, and discharged to the Charleston County Detention Center.

On January 19, 2006, Officer Gamba filed a Motion for Summary Judgment and a supporting memorandum. [33–1] Another *Roseboro* Order was issued to Plaintiff, directing him to respond within thirty-four (34) days. [34–1] On February 3, 2006, Plaintiff filed a Motion to execute judgment pursuant to Rule 58, and seize property from the defendants Ahmed and Muharan.[12] [35–1]

After Plaintiff failed to respond to the *Roseboro* Order, the court issued an Order permitting Plaintiff an additional twenty (20) days in which to respond. [38–1] On March 23, 2006, Plaintiff filed a response and attached photocopies of photographs taken of his injuries inflicted by K–9 Vito. [39–1] In that pleading, Plaintiff argued he was wrongfully attacked and beaten by Officer Gamba, and "[e]xcessive force was being used three individuals was attacking plaintiff[.]"[13]

Officer Gamba has moved for dismissal of the action [29–1] and also for summary judgment. [33–1] Although Ahmed and Muharan were served, the Clerk of Court has entered default against them for failure to answer.

### IV. JURISDICTION

This court construes Plaintiff's action as one filed under United States Code Sections 28 U.S.C. §§ 1331 and 1343 and under 42 U.S.C. § 1983. Section 1331 allows districts courts to have original jurisdiction of civil actions which arise under the Constitution, laws or treaties of the United States. Section 1343 specifically gives the district courts original jurisdiction of civil rights actions brought under Section 1983. Section 1983, the primary basis for jurisdiction of the Plaintiff's lawsuit, provides in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Accordingly, as required by statute, Plaintiff must meet two requirements to bring suit under Section 1983. First, he must show that the defendants Ahmed and Muharan deprived Plaintiff of his rights "under color of" state law, and second, that the deprivation is of a right guaranteed by the Constitution or laws of the United States. First, a review of Plaintiff's complaint shows that the most obvious deficiency is the lack of any "state action" in the alleged actions by the Defendants Ahmed and Muharan. *See, e.g., Mitchell v. Chontos,* 756 F.Supp. 243, 247–248 (D.S.C.1990). Second, It appears to this court that any actions taken by Ahmed and Muharan did not deprive the Plaintiff of any constitutional right.

As Judge Wilkinson has explained: "In the context of constitutional claims under 42 U.S.C. § 1983, which expressly applies to individuals acting 'under color of' state law, courts have recognized the need to

---

**12.** The court will consider this as a Motion for Default pursuant to Rule 55(a), which provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."

**13.** *See* Plaintiff's Affidavit at p. 1, attached to Plaintiff's Response. [39–1]

limit the liability of private persons through application of the 'state action' doctrine." *Holly v. Scott,* 434 F.3d 287, 292 (4th Cir.2006), *quoting Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 935, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). "Under this doctrine, we 'insist[ ]' as a prerequisite to liability 'that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.'" *Holly,* 434 F.3d at 292, quoting *Lugar,* 452 U.S. at 937, 101 S.Ct. 3078. "By doing so, we maintain the Bill of Rights as a shield that protects private citizens from the excesses of government, rather than a sword that they may use to impose liability upon one another." *Holly,* 434 F.3d at 292, citing *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 172, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). The Fourth Circuit has recognized that there is "no specific formula" for determining whether state action is present. *Holly,* 434 F.3d at 292, *quoting Hicks v. S. Md. Health Sys. Agency,* 737 F.2d 399, 402 n. 3 (4th Cir.1984) (internal quotation marks omitted). "What is fairly attributable [to the state] is a matter of normative judgment, and the criteria lack rigid simplicity." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001). While a variety of factors may bear upon the inquiry, none is individually dispositive; instead, they serve to inform an evaluation of the "totality of the circumstances." *Goldstein v. Chestnut Ridge Volunteer Fire Co.,* 218 F.3d 337, 343 (4th Cir.2000); *see also Mentavlos v. Anderson,* 249 F.3d 301, 311–12 (4th Cir.2001) (cataloging various approaches to determining state action).

In the present case, the alleged actions of Ahmed and Muharan cannot be said to be of a sufficiently 'state character' to create constitutional liability. Neither Ahmed nor Muharan were state officials, state employees, or connected to the state government in any way that would cause this court to consider them to be "state actors". Instead, Ahmed and Muharan only became involved in the events of the evening because the Plaintiff had burglarized their home and these Defendants had arrived just in time to find Plaintiff loading his car with their belongings. Nor can this court consider any actions taken by Ahmed or Muharan to be pursuant to authority from a state officer such as Officer Gamba. It may be that Ahmed and Muharan cooperated with Officer Gamba by retrieving his handcuffs where they had been dropped during the scuffle with Plaintiff, and by calling 911 on a personal cellphone because Officer Gamba's radio was not working. To consider such actions as cloaked by state action or somehow impute those actions to the state would render meaningless the definition of state action, as then every type of assistance rendered to a state law enforcement official by a private person, no matter how trivial, would cause that person to be considered a state actor and thus subject to liability under Section 1983. *Accord, UAW, Local No. 5285 v. Gaston Festivals, Inc.,* 43 F.3d 902 (4th Cir.1995); *Chiles v. Crooks,* 708 F.Supp. 127, 130–131 (D.S.C.1989) (Hamilton, J) (private security guard was not acting under color of state law when he reported arrestees' alleged criminal behavior to police).

In the present case, the court is convinced that Plaintiff cannot state a Section 1983 claim against Ahmed and Muharan under any facts as set forth in the complaint or as could be developed through discovery. Ahmed and Muharan did nothing more than follow the directives of Officer Gamba as he arrested Plaintiff. For Ahmed and Muharan, as victims of Plaintiff's burglary, to be subject to liability under Section 1983 render the definition of "state actor" meaningless. Thus, the court recommends, *sua sponte,* that Ahmed and Muharan be relieved from the Clerk of Court's entry of default against them, and

that they be dismissed from this case as the court lacks jurisdiction over them.

Having so recommended, this court will turn its attention to Officer Gamba's motion for summary judgment as to Plaintiff's claims.

## V. THE STANDARD FOR DETERMINING A MOTION FOR SUMMARY JUDGMENT

The Defendant's Motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126 (4th Cir.1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. *Stone v. University of Md. Medical Sys. Corp.,* 855 F.2d 167 (4th Cir.1988).

In deciding whether to grant a motion for summary judgment, all justifiable inferences must be drawn in favor of the non-moving party. *Miltier v. Beorn,* 896 F.2d 848, 852 (4th Cir.1990); *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addition, "once a plaintiff 'has

named a witness to support [his] claim, summary judgment should not be granted without ... somehow showing that the named witness' possible testimony raises no genuine issue of material fact.'" *Miltier,* 896 F.2d at 852, *quoting Celotex v. Catrett,* 477 U.S. 317, 328, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (White J., concurring).

For purposes of evaluating the appropriateness of summary judgment, this court must construe the facts are set forth in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

When, as in the present case, the Defendants are the moving party, and the Plaintiff has the ultimate burden of proof on an issue, the Defendants must identify the parts of the record that demonstrate the Plaintiff lacks sufficient evidence. The nonmoving party, then, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## VI. DISCUSSION

### A. Whether Officer Gamba used excessive force when arresting Plaintiff

Plaintiff claims that he suffered an "unprovoked beating" by Officer Gamba, and

that unnecessary force was used against him when Officer Gamba released K–9 Vito in pursuit of Plaintiff.

As mentioned above, Plaintiff was treated by EMS at the scene of the arrest, and transported to the emergency room for further treatment, and released approximately three hours after the arrest.

The Fourth Amendment provides protection against force during arrest. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). All claims of use of excessive force during investigatory stop or arrest or other seizures are governed by the Fourth Amendment's "objective reasonableness" standard. *Id.* The test for excessive force in arrest context requires "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governments interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The standard for measuring reasonableness of arrest is wholly objective. The objective reasonableness test requires careful attention to circumstances of particular case, including the severity of the crime, whether the suspect poses immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865, *Foote v. Dunagan*, 33 F.3d 445 (4th Cir.1994). The focus is on reasonableness at the moment, recognizing that officers are often faced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865.

In addition, the court may also consider the extent of plaintiff's injuries, or lack of them, in weighing his claim of excessive force. In a case from the prison milieu, the United States Supreme Court indicated that the amount of injury is irrelevant, if the inmate can show that it was inflicted with a malicious intent to harm. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). A plaintiff may not recover, however, for only de minimis injuries. *Id.* Although that standard is used in consideration of Eighth Amendment claims of cruel and unusual punishment, the same thought must be applied in cases questioning the "objective reasonableness" of force used to effect an arrest. Thus, a review of cases determining cruel and unusual punishment under the Eighth Amendment is instructive. "An excessive force claim generally should not lie where any injury sustained by the plaintiff is *de minimis.*" *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir.1994), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995). In *Norman*, the plaintiff alleged that an officer hit his hand with brass keys causing great pain and swelling as well as loss of partial use of his right hand and residual pain for three years. The court found plaintiff's injury to be *de minimis*, noting that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis.*" Likewise, while "[t]he due process clause protects a pre-trial detainee from 'the use of excessive force that amounts to punishment," *United States v. Cobb*, 905 F.2d 784–788 (4th Cir.1990) *(citations omitted)*, absent the most extraordinary circumstances, excessive force claims do not lie where the injury *is de minimis.*

Clearly, in light of the *de minimis* nature of any alleged injury, Plaintiff's excessive force claim is patently without merit. Since Plaintiff sustained no serious or significant injury, his claim is not cognizable under 42 U.S.C. § 1983. As *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), explains, "not every push or shove by a state actor can rise to

the level of a violation of constitutional rights." The Fourth Circuit has observed:

Punishment must mean something more than trifling injury or negligible force. Otherwise, every touch would be actionable and every alleged 'push or shove' would entitle plaintiff to a trial. This is no idle concern. Those in detention often detest those charged with supervising their confinement, and seek to even the score through the medium of a lawsuit. The Constitution, however, does not exist to scoop up every last speck of detainee discontent. To hold that every incident involving contact between an officer and a detainee creates a constitutional action, even in the absence of injury, trivializes the nation's fundamental document.

Plaintiff bases his allegation of a constitutional violation on the fact that he suffered dog bites as a result of his disregard of Officer Gamba's warning that he would release the K–9 unit, Vito. In the present case, the force used by Officer Gamba when attempting to arrest Plaintiff appears appropriate from the evidence in the record, and the resulting "injuries" to Plaintiff (the dog bites from K–9 Vito) are *de minimis*. The medical records state that Plaintiff was discharged from the ER with directions to keep the wounds clean. There is no evidence in the record before this court that Plaintiff suffered any complications from the dog bites, or that he needed further medical attention. Injuries which are *de minimis* generally do not support a claim for a constitutional violation. *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir.1997) (en banc) (holding that a plaintiff cannot prevail on a Section 1983 excessive force claim if his injury is de minimis); *see, e.g., Taylor v. McDuffie*, 155 F.3d 479 (4th Cir.1998) (even if there were a genuine issue of material fact as to whether officers behaved maliciously or sadistically after need for force had subsided, pretrial detainee failed to show that injuries allegedly resulting from "jabbing" of a kubaton into detainee's nose and mouth were more than *de minimis;* no medical treatment was required or prescribed for any such injuries and medical records did not support the injuries that the detainee purported to have received); *see also Oliver v. Keller*, 289 F.3d 623 (9th Cir.2002) (where pretrial detainee did not suffer more than *de minimis* physical injury during his confinement, the PLRA barred his Section 1983 claim for mental or emotional injury); *Gavin v. Ammons*, 21 F.3d 430, 1994 WL 117983 (7th Cir. April 6, 1994) [Table] (guard's pulling of inmate's hair was *de minimis* force); *Calabria v. Dubois*, 23 F.3d 394, 1994 WL 209938 (1st Cir. May 24, 1994) [Table] (radio belt thrown at face of inmate causing blood to appear was *de minimis* force); *White v. Holmes*, 21 F.3d 277, 280–81 (8th Cir.1994) (keys swung at inmate which slashed his ear was *de minimis* force); *Jackson v. Pitcher*, 966 F.2d 1452, 1992 WL 133041 (6th Cir. June 16, 1992) [Table] (guard's stomp on the hand of inmate was *de minimis* force), *cert. denied,* 506 U.S. 1024, 113 S.Ct. 665, 121 L.Ed.2d 590 (1992); *Black Spotted Horse v. Else,* 767 F.2d 516, 517 (8th Cir.1985) (corrections officer's pushing a cubicle wall so as to strike plaintiff's legs, a brusque order to an inmate and poking the inmate in the back was *de minimis* force); *see also Roberts v. Samardvich,* 909 F.Supp. 594 (N.D.Ind.1995) (grabbing inmate, pushing him up the stairs toward his cell, and placing him in cell cuffed, shackled, and secured to the door was *de minimis* force under the circumstances); *McMiller v. Wolf,* 1995 WL 529620 (W.D.N.Y. August 28, 1995) (snatching inmate's mirror, breaking it against cell bars and thereby lacerating inmate's finger was *de minimis* force); *Crow v. Leach,* 1995 WL 456357 (N.D.Cal. July 28, 1995) (corrections officer's pushing inmate into chair causing his shoulder to break window behind him was *de minimis*

force); *Jackson v. Hurley*, 1993 WL 515688 (N.D.Cal. November 23, 1993) (blow to back of neck with forearm and kick to the ankle of inmate were *de minimis* force); *DeArmas v. Jaycox*, 1993 WL 37501 (S.D.N.Y. February 8, 1993), *aff'd*, 14 F.3d 591 (2d Cir.1993) (corrections officer's punching inmate in arm and kicking inmate in leg was *de minimis* force); *Olson v. Coleman*, 804 F.Supp. 148, 150 (D.Kan.1992) (single blow to head of handcuffed inmate was *de minimis* force); *Candelaria v. Coughlin*, 787 F.Supp. 368, 374–75 (S.D.N.Y. 1992) (fist pushed against neck of inmate causing him to lose his breath was *de minimis* force), *aff'd*, 979 F.2d 845 (2d Cir.1992); *Neal v. Miller*, 778 F.Supp. 378, 384 (W.D.Mich.1991) (backhand blow with fist to the groin of inmate was *de minimis* force); *Ramos v. Hicks*, 1988 WL 80176 (S.D.N.Y. July 25, 1988) ("bent wrist come-along hold" or single punch not unreasonable or excessive where inmate ignored repeated order, became agitated, and attempted to damage state property); *Anderson v. Sullivan*, 702 F.Supp. 424, 426 (S.D.N.Y.1988) (corrections officer's pulling inmate's arms behind back, lifting them up and forcing inmate's face into cell bars was *de minimis* force).

Applying these cases to the facts at hand, it is clear that Plaintiff's injuries were *de minimis*, and thus Officer Gamba did not violate any of Plaintiff's constitutional rights and is entitled to summary judgment as to Plaintiff's excessive force claims.

### B. Officer Gamba is Entitled to Immunity in his Official Capacity Pursuant to the Eleventh Amendment

When a defendant is sued in his official capacity, as in the case sub judice, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court analyzed the interplay between Section 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to over ride that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. *Will*, 491 U.S. at 70, 109 S.Ct. 2304. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. *Will*,

491 U.S. at 70, 109 S.Ct. 2304. As this is a lawsuit against a state official, it is recommended that he is entitled to Eleventh Amendment immunity from monetary damages. Accordingly, it is recommended that summary judgment be granted pursuant to Rule 56 in favor of Defendant Gamba on these grounds.

### RECOMMENDATION

For the aforementioned reasons, **it is recommended that the Defendants Ahmed and Muharan be relieved of the entry of default against them [25–1]** and that this case be dismissed as against the Defendants Ahmed and Muharan. It also is recommended that **Plaintiff's Motion to Execute Judgment [35–1] be denied.**

It further is recommended that **Officer Gamba's Motion to Dismiss [29–1] is deemed moot** and **Officer Gamba's Motion for Summary Judgment [33–1] be granted.**

Apr. 21, 2006.