PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LOWELL DEAN WILSON,
　　　　　　*Plaintiff-Appellant,*

v.

DAVID FLYNN; JASON BUTLER;
TOWN OF AYDEN,
　　　　　　*Defendants-Appellees.*

No. 04-2491

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Malcolm J. Howard, District Judge.
(CA-03-24)

Argued: September 21, 2005

Decided: November 15, 2005

Before MOTZ, TRAXLER, and SHEDD, Circuit Judges.

---

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Traxler and Judge Shedd joined.

---

## COUNSEL

George Mason Oliver, STUBBS & PERDUE, P.A., New Bern, North Carolina, for Appellant. Brian Edwin Edes, CROSSLEY, McINTOSH, PRIOR & COLLIER, Wilmington, North Carolina, for Appellees.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

This appeal arises out of two North Carolina police officers' arrest of Lowell Dean Wilson. Wilson contends that police officers, and the town that employed them, used excessive force when arresting him and so violated his Fourth Amendment rights. The district court granted summary judgment to the officers and the town based on qualified immunity. We affirm.

I.

When determining whether defendants are entitled to qualified immunity, a court must consider the facts "in the light most favorable to the party asserting the injury." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

On the afternoon of April 24, 2002 in the Town of Ayden, North Carolina, Wilson consumed four twelve-ounce beers at his home. When his wife came home from work, her teenage stepdaughter told her that Wilson "was drunk and tearing up the house." Mrs. Wilson took their 23-month-old child and drove to the police station for assistance. At the station she spoke to Officer David Flynn, who then accompanied Mrs. Wilson back to the house. After some loud conversation between Wilson and Officer Flynn inside the house, Officer Flynn called Officer Jason Butler for backup.

Officer Flynn went outside the house to speak to Mrs. Wilson, who told him that there was a gun in the house, although she had hidden it from her husband. Wilson himself then left the house and walked over to the car that Mrs. Wilson had been driving. He removed the car's spark plug wires, then put his hand on Mrs. Wilson's face and "told her she weren't carrying my children no where." Mrs. Wilson promptly told Officer Flynn that she wanted Wilson arrested for domestic violence.

At this juncture, Officer Butler arrived on the scene and turned on a microphone that recorded the audio of the following events. Officer

Flynn followed Wilson toward the house, trying to put Wilson's hands in handcuffs while the two were on the porch. Wilson said "don't snatch on my god-damn hands" and entered the house. Officer Flynn followed and a struggle ensued as Officer Flynn tried to get Wilson in handcuffs. The officers repeatedly told Wilson to put his hands behind his back, which Wilson refused to do. During the melee, Officer Flynn punched Wilson in the face, and Officer Butler sprayed Wilson with mace. Although Wilson told health care workers immediately after the incident that he "fell against" the fireplace and that he "hit the fireplace screen during a fall," he asserted in a later deposition that the officers shoved him, stomped on his foot, punched him repeatedly, kicked him in the face and the ribs, sprayed his eyes with two cans of mace, and slammed his face into the fireplace screen.

In any event, it is undisputed that during the struggle between Wilson and the police officers, Wilson's mother, his son, his daughters Whitney and Haley, and Haley's boyfriend were also in the house. In the midst of the scuffle, both the participants and onlookers can be heard on the tape shouting and using profanity. In addition, one of Wilson's daughters pleaded with her father to calm down and cooperate with the police. Wilson identified his mother's voice on the tape as saying "he needs to go to detox" and "he told me [he was] about to lose it." Further, Wilson stated in deposition testimony that none of the family members present attempted to intervene or even asked the officers to stop.

Wilson concedes that as soon as he was in handcuffs, all violence ceased. As a result of the incident, the left side of Wilson's face was badly bruised and swollen, and he suffered a nasal fracture.

A state court later tried Wilson on charges of assaulting a female and resisting arrest. On August 29, 2002, after a bench trial, the state judge found Wilson guilty on both counts but granted a "Prayer for Judgment" continued if Wilson would complete a domestic violence counseling program.

Eight months later Wilson filed this action against Officers Flynn and Butler and the Town of Ayden. After discovery, including nine depositions, the district court granted summary judgment to all defendants. Wilson timely noted an appeal.

## II.

Determining whether defendant public officers are entitled to qualified immunity involves a two-step analysis. A court must first decide "whether a constitutional right would have been violated on the facts alleged." *Saucier*, 533 U.S. at 200. If so, then a court must determine if that right was clearly established at the time of the alleged violation. *Id.* But "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* at 201. The case at hand can be resolved at the first step.

That first step, in an excessive force case arising out of an arrest, requires analysis "under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). This standard mandates "a careful balancing" of Fourth Amendment rights "against the countervailing governmental interests at stake." *Id.* at 396. Application of the standard is highly fact dependent; factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest." *Id.* The reasonableness of the force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Thus to allege violation of a constitutionally protected right, Wilson must allege facts demonstrating that Officers Flynn and Butler used force in an objectively unreasonable manner under the circumstances.

The *Graham* factors do not weigh in Wilson's favor. With respect to the first *Graham* factor, Wilson contends that the severity of the crime at issue was minor because he "did not cause any physical harm" to his wife. Brief of Appellant at 12 (emphasis omitted). Although the assault for which Wilson was eventually convicted did not result in any significant physical harm, it still constitutes criminal activity. Moreover, a reasonable officer could certainly conclude that Wilson's conduct evidenced an intent to hurt Mrs. Wilson if she did not accede to his wishes. Accordingly, Wilson's behavior significantly differs from that of the plaintiffs in *Jones v. Buchanan*, 325 F.3d 520, 528 (4th Cir. 2003), and *Bailey v. Kennedy*, 349 F.3d 731, 743 (4th Cir. 2003), on which he heavily relies. In both *Jones* and

*Bailey* the plaintiffs had committed *no* crime when the police used force to subdue them. Thus the first *Graham* factor does not assist Wilson.

The second *Graham* factor provides no more help to Wilson. Although Wilson argues that he did not pose an immediate threat to the safety of the officers, his wife, or anyone else, this argument is unconvincing. It is undisputed that Wilson had been drinking, that his daughter informed his wife that he was drunk and tearing up the house, and that Mrs. Wilson went to the police for protection. Similarly, there is no dispute that Mrs. Wilson told the police that Wilson was drunk and that there was a gun in the house. Moreover, the officers saw Wilson disable the car his wife had been driving and tell her that she would not be going anywhere with their small child. Given these circumstances, Wilson's actions cannot be dismissed as harmless. Rather, these undisputed facts demonstrate that a reasonable officer could well have concluded that Wilson posed a threat to the safety of his wife, children, the other onlookers, and the officers themselves.

The third *Graham* factor — whether the suspect "is actively resisting arrest or attempting to evade arrest by flight" — also cuts against Wilson. *Graham*, 490 U.S. at 396. The parties dispute whether Officer Flynn told Wilson he was under arrest. But even assuming the officer never made this statement, Wilson still disobeyed Officer Flynn's orders and physically resisted when Officer Flynn attempted to put Wilson in handcuffs. The record suggests that Flynn first attempted to handcuff Wilson on the front porch. Indeed Wilson himself remembers that he told Flynn not to grab his hands before Wilson entered the house and suffered the purported multiple blows. The audio tape of the scuffle also provides evidence that Wilson was actively resisting the officers; for example, Wilson's daughter repeatedly pleaded with him to comply with the officers' instructions.

We also find it significant that Wilson admits that the allegedly excessive force ceased after the officers handcuffed him. As the district court noted, "[t]his fact supports the finding that the force used by the officers was that force which was necessary to effect the arrest of an aggressive individual in a rapidly changing environment." *See* JA 516. Wilson does not allege that the officers used any improper force after restraining him; this fact distinguishes Wilson's case from

many in which we have held the plaintiff has alleged an excessive force claim. *See, e.g.*, *Young v. Prince George's County*, 355 F.3d 751, 757-58 (4th Cir. 2004) (noting that after handcuffing plaintiff the officer threw him to the ground and beat him); *Bailey*, 349 F.3d at 744 (noting the police "continued to use force after [plaintiff's] hands were bound behind his back, his feet were bound and he was lying face down on the floor"); *Kane v. Hargis*, 987 F.2d 1005, 1008 (4th Cir. 1993) (per curiam) (noting that after police officer restrained plaintiff he cracked three of her teeth, cut her nose, and bruised her face); *see also Jones*, 325 F.3d at 529 (noting that the defendant used force to subdue the handcuffed plaintiff who did not pose an immediate threat).

In sum, the record shows that Officers Flynn and Butler arrived at the Wilson house and confronted a volatile domestic disturbance. Wilson's use of alcohol, his assault of his wife, the presence of a gun in the house, and his active resistance to the officers' efforts to handcuff him all support the conclusion that the officers' use of force was not objectively unreasonable. In this case, "the totality of the circumstances" demonstrates that Wilson's allegations fail to establish that the officers' use of force violated his constitutional rights. *Jones*, 325 F.3d at 531. Because Wilson's allegations do not make out a constitutional violation, the district court properly granted summary judgment to the police officers and the town.*

III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

---

*The lack of a constitutional violation also disposes of Wilson's claim against the Town of Ayden. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).