**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 11-7455**

_____

GEORGE DAVID REDDING, Administrator of the Estate of Daphne
Stubbs Redding,

                Plaintiff - Appellant,

ESTATE OF DAPHNE STUBBS REDDING,

                Party-In-Interest,

     v.

TROOPER D.P. BOULWARE; DEPUTY B.A. HILL; SOUTH CAROLINA
HIGHWAY PATROL,

                Defendants – Appellees,

     and

LEXINGTON COUNTY SHERIFF'S DEPARTMENT,

                Defendant.

_____

Appeal from the United States District Court for the District of
South Carolina, at Rock Hill.  Henry F. Floyd, District Judge.
(0:09-cv-01357-HFF)

_____

Argued:  September 20, 2012      Decided:  December 20, 2012

_____

Before NIEMEYER and KEENAN, Circuit Judges, and Michael F.
URBANSKI, United States District Judge for the Western District
of Virginia, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion, in which Judge Urbanski joined. Judge Keenan wrote a dissenting opinion.

———————————

**ARGUED:** John Dewey Elliott, Columbia, South Carolina, for Appellant. Patrick John Frawley, DAVIS, FRAWLEY, ANDERSON, MCCAULEY, AYER, FISHER & SMITH, LLC, Lexington, South Carolina, for Appellees. **ON BRIEF:** David A. Fedor, Columbia, South Carolina, for Appellant. Michael S. Pauley, LIDE AND PAULEY, LLC, Lexington, South Carolina, for Appellees Trooper D.P. Boulware and South Carolina Highway Patrol; Daniel C. Plyler, DAVIDSON & LINDEMANN, PA, Columbia, South Carolina, for Lexington County Sheriff's Department.

———————————

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

This case presents the issue of whether law enforcement officers used excessive force in effecting the arrest of Daphne Redding, of Columbia, South Carolina, following a traffic stop.

During the course of a traffic stop, Redding (1) failed to stop in response to South Carolina State Trooper D.P. Boulware's use of his police car's blue light and siren; (2) failed to obey the trooper's repeated directives to sit down in her car after she was stopped; (3) refused to produce her driver's license and registration; and (4) in other respects failed to cooperate with the trooper's lawful commands. When Redding pushed Trooper Boulware out of her way in an effort to walk past Boulware to her apartment, Trooper Boulware attempted to place Redding under arrest for assaulting a police officer. Redding, however, refused to be handcuffed. Trooper Boulware was able to place a handcuff on one of Redding's wrists but, because of her continuing and active resistance, was unable to place the handcuff on the other.

In response to Trooper Boulware's call for assistance, Lexington County Deputy Sheriff B.A. Hill arrived and directed Redding to place her unsecured arm behind her back so that it could be cuffed. As she refused, Deputy Hill repeated the command six more times. Because Redding continued to resist, Deputy Hill used force to move Redding's hand behind her back

3

and place the second handcuff on her.  After being cuffed, Redding ceased resisting, and charges against her were processed in the normal course.

During the course of the scuffle, however, Redding sustained abrasions when resisting as she was held on the ground and a broken arm when Deputy Hill forced her arm behind her to be cuffed.  She commenced this action under 42 U.S.C. § 1983, contending that the officers used excessive force in arresting her.  The district court granted summary judgment to the officers, and we now affirm.

I

The record in this case is substantially not in dispute,[1] as the entire encounter was recorded on videotape, with a clock recording the passage of time on the videotape, and discloses a continually escalating series of events that developed over a period of some 20 minutes.

A few minutes after 4 a.m. on May 28, 2007, Trooper Boulware observed a vehicle on I-26 in Columbia, South Carolina,

---

[1] Redding does dispute that she was going only 35 miles per hour on I-26, below the minimum speed of 45 miles per hour, as claimed by Trooper Boulware.  She testified that she was going the speed limit.  The district court, however, found that this factual dispute over Redding's speed was not material.  We agree because the traffic stop was justified by various other traffic violations, as well as Trooper Boulware's initial suspicion that Redding had been drinking, although, as it turned out, he concluded later that she had not been drinking.

4

traveling at about 35 miles per hour, which was below the minimum 45-mile-per-hour speed limit on the Interstate. As he observed the vehicle, it was also weaving from lane to lane; its brakes were being applied for no apparent reason; and, when turning right from the Interstate, its turn signal was not used. Trooper Boulware turned on his marked police car's blue light and, on an intermittent basis, his siren in an effort to stop the vehicle. The vehicle, however, failed to stop and continued driving for about a half a mile, after which it entered the parking lot of an apartment complex. Using his public address microphone, Trooper Boulware directed the driver to stop the car, and he focused his search light on the vehicle. The vehicle stopped, and Daphne Redding, a 67-year-old woman, exited the vehicle. Trooper Boulware asked Redding why she took so long to stop, and Redding responded that she could not tell whether he was a policeman. Boulware then told Redding to "have a seat back in your car." Redding, however, refused, and Boulware repeated the command four separate times. Redding stated that she was going to go to her apartment to get her husband. When the officer told her that she could not do that, she started to honk the horn. Again Trooper Boulware instructed her not to honk the horn.

Trooper Boulware demanded that Redding produce her driver's license, registration, and proof of insurance, and Redding

responded, "Wait just a minute," and she continued to yell for her husband. Boulware continued to insist that Redding produce her registration and insurance on four different occasions over the next several minutes. On each occasion, Redding told the trooper to wait a minute. Redding also tried to use her cell phone to call her husband, and after she ignored Trooper Boulware's command not to call anyone, Boulware moved to take her phone. Redding then attempted to walk to the apartment to get her husband. As Trooper Boulware blocked her way and pressed Redding for her license, Redding pushed Trooper Boulware backward, and walked by him. At that point, at 4:09 a.m., Trooper Boulware announced that he was placing Redding under arrest.

When Trooper Boulware sought to effect the arrest by placing handcuffs on Redding, Redding resisted. Trooper Boulware then pushed Redding against the front of a nearby automobile in an effort to handcuff her. As Redding continued to resist, he took her to the ground. Trooper Boulware told Redding reportedly to quit fighting him; she was under arrest; and "you are going to be charged with resisting if you do not put that other hand behind your back." Redding, however, kept calling for her husband and kept resisting. While the officer was able to get one handcuff on, he was unable to get the other on, despite instructing Redding several times, "Give me your

6

hand." After struggling unsuccessfully to place Redding in handcuffs for a period of some four minutes, Boulware called the dispatcher for assistance. He stated, "I've got one cuff on her. I can't do much else with her." Trooper Boulware and Redding were about the same size. Boulware was approximately 5 feet 7 inches tall and weighed 175 pounds; Redding was approximately 5 feet 6 inches tall and weighed 190 pounds.

Over the next five to ten minutes, while Trooper Boulware was holding Redding on the ground and waiting for assistance, Redding continued to resist. At one point, she said she was hurting, and the officer indicated "we both are. I think you dislocated my finger." When Redding asked, "what do you want from me?", the trooper stated, "You are under arrest for assaulting a police officer." After several minutes passed, Trooper Boulware stated again, "Now you need to quit fighting me and give me your other hand so that we can get this over with instead of fighting me because you ain't doing nothing but hurtin' yourself." Several minutes later, when the dispatcher asked Officer Boulware, "Have you got the subject in custody now?", Officer Boulware stated, "Negative. Not Yet. I am just trying to do what I can without hurting her any --."

At 4:21 a.m., some 12 minutes after Trooper Boulware first sought to effect the arrest of Redding, Lexington County Deputy Sheriff Hill arrived. Deputy Hill then instructed Redding,

7

"Ma'am come, you need to bring hands behind your back."  After Redding refused and resisted, Deputy Hill repeated the command six more times as he attempted to place her wrist into the handcuffs, warning her that her resisting was "going to cause [him] to break [her] arm."  Finally, at 4:22 a.m., while Officer Boulware was holding Redding down, Deputy Hill forced Redding's wrist into the handcuffs and thus placed her in custody.  At that point, Redding stopped resisting, and the officers called for medical help to treat Redding's injuries -- abrasions and what turned out to be a broken arm.

In May 2009, Redding commenced this action against the officers under 42 U.S.C. § 1983, contending that Trooper Boulware and Deputy Hill used excessive force, in violation of her Fourth Amendment rights.  She alleged that when Deputy Hill came to assist Trooper Boulware, he "grabbed her right hand and jammed it into Boulware's handcuff, twisting her arm and breaking it."  She alleged that this use of physical force was "clearly excessive in light of the circumstances that existed at the time of the traffic stop."

On the defendants' motion for summary judgment, in which the defendants contended that Redding had failed to establish a constitutional violation and that, in any event, they enjoyed qualified immunity, the district court ruled that

8

in light of plaintiff's persistent resistance and attempts to leave the scene, the force applied by defendant Boulware and defendant Hill was objectively reasonable. The facts -- as recounted by the magistrate judge and not objected to by the plaintiff -- demonstrate that the level of force applied by the officers was tailored to that necessary to effectuate the seizure. Plaintiff's behavior from the outset was marked by continual resistance and evasiveness.

Addressing more particularly the conduct of Deputy Hill, on which Redding's claims centered, the court concluded

the force applied by defendant Hill was not gratuitous. It was designed at all times to effectuate the seizure by putting the handcuffs on plaintiff, who continually resisted his efforts. Upon arriving, he instructed plaintiff at least six times to put her hands behind her back, but she persisted in her resistance and refused to do so.

The court thus held that the force used by the law enforcement officers was not excessive and did not contravene the reasonableness requirement of the Fourth Amendment. Because the court found no constitutional violation, it concluded that it need not address the issue of qualified immunity.

This appeal followed.[2]

## II

The Fourth Amendment protects the people against unreasonable seizures -- i.e., as applicable in this

---

[2] Shortly before oral argument, Redding died of unrelated causes, and pursuant to Federal Rule of Appellate Procedure 43(a)(1), we have substituted the administrator of her estate as the appellant.

9

case -- against officers' use of excessive force in effecting a seizure. See Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). The standard for whether an officer uses excessive force is "objective reasonableness." Graham, 490 U.S. at 388.

In this case, Redding does not challenge an officer's right to place a person under arrest for assaulting a police officer, nor an officer's right to place that person in handcuffs as part of the arrest process. Rather, she contends that the law enforcement officers used excessive force in putting on the handcuffs.[3]

While it is undisputed that Redding sustained injuries, it is also undisputed that throughout the entire encounter, Redding resisted arrest and that the officers used such force as was necessary to handcuff her, and no more. Indeed, Trooper

---

[3] Redding also challenges the justification of "her custodial arrest for the offense of driving below the minimum limit," arguing that she had the right to resist such an arrest as unlawful. But this argument fails because it relies on an erroneous reading of the record. Trooper Boulware's initial traffic stop of Redding was justified, as we explained in footnote 1, and Redding was arrested later for assaulting a police officer after pushing Trooper Boulware. As Boulware tried to take Redding into custody, Redding asked, "What do you want from me?" Boulware answered, "You are under arrest for assaulting a police officer." In addition, as Redding resisted Trooper Boulware's attempt to place her in custody, Boulware told Redding, "You are going to be charged with resisting if you do not put that other hand behind your back." Despite the warning, Redding continued to resist.

10

Boulware could not accomplish the task alone and needed the assistance of Deputy Hill.

When Deputy Hill finally came, he commanded Redding to succumb to handcuffing. Only when she refused to comply, after seven separate commands, Deputy Hill forced Redding's wrist into the handcuffs. That force was not greater than necessary to effect the arrest, and any injury resulting from it, while unfortunate, was the result of Redding's resisting arrest and refusing the officers' efforts to place her in handcuffs. There was no evidence on the videotape or in the transcript of it showing or suggesting any gratuitous violence by either officer. To the contrary, the officers repeatedly expressed regret to Redding, noting that all she had to do was to obey the officers' commands and there would be no problem. Indeed, Officer Boulware told Redding that she would not even have received a traffic ticket.

We conclude that the force used by the officers was only so much as was necessary to effect the arrest and, therefore, was not objectively unreasonable.

Accordingly, the judgment of the district court is

AFFIRMED.

BARBARA MILANO KEENAN, Circuit Judge, dissenting:

Daphne S. Redding, a 67-year-old woman returning home from a local hospital, committed the minor traffic violation of failing to activate her vehicle's "turn signal" upon making a right turn. The majority concludes that the use of force to arrest her, which included breaking her arm, was not excessive. I respectfully dissent.

"The Fourth Amendment's prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). In determining whether a particular use of force violated an individual's right to be free from an unreasonable seizure, "the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996) (citing Graham, 490 U.S. at 396-97).

In the present case, South Carolina Highway Patrol Trooper D.P. Boulware activated his vehicle's emergency lights after observing Redding's traffic violation, and followed her a short

12

distance to her apartment complex.[1] Upon arriving at the apartment complex and being confronted by Trooper Boulware, Redding exhibited clear signs of fear and confusion,[2] and sought to contact her husband using her cellular telephone. Trooper Boulware denied Redding this request and attempted to gain control of her cellular telephone. After Boulware failed in this effort, he informed Redding that she was under arrest. Redding made no attempt to leave the scene.

After unsuccessfully trying to place both Redding's hands in handcuffs, Trooper Boulware executed a maneuver forcing Redding to the concrete surface, injuring her in the process. Even while "straddling" Redding on the ground, Trooper Boulware was unable to secure Redding in handcuffs. At this point, he sought "backup assistance," which resulted in Lexington County Deputy Sheriff B.A. Hill arriving at the scene of the incident.

---

[1] The majority emphasizes the fact that, after Trooper Boulware activated his emergency lights Redding "failed to stop and continued driving for about half a mile." (Maj. slip op. at 5.) However, the policy of the Lexington County Sheriff's Department recognizes that female or elderly drivers "may be hesitant to stop for a law enforcement vehicle while [alone] on an unlighted or desolate roadway," and provides that "[i]n non-felony situations, this is a reasonable expectation."

[2] The video recording of the incident establishes that any reasonable observer would have been able to ascertain that Redding was frightened and confused, almost to the point of being disoriented. In fact, Redding immediately informed Trooper Boulware that she was "really afraid." Redding was not under the influence of alcohol, drugs, or medication.

13

Deputy Hill informed Redding that if she did not follow his directions, she was "going to cause [him] to break [her] arm." When Redding did not acquiesce, Deputy Hill forcibly placed her hands into handcuffs, breaking her arm as he warned he would. The injury to Redding's arm required surgery and resulted in permanent injury. As stated in their deposition testimony, at no point in the encounter did Trooper Boulware or Deputy Hill think that Redding posed any threat to their safety.

Rather than recite these facts and all reasonable inferences in the light most favorable to the plaintiff, as we are required to do at this stage of the proceedings, see Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011), the majority states the facts from Trooper Boulware and Deputy Hill's perspective. Among other omissions, the majority fails to account for Deputy Hill's statement that Redding would "cause" him to break her arm if she did not allow him to place her hands into the handcuffs.

Based on the above facts, I would conclude that Trooper Boulware and Deputy Hill (collectively, the officers) were not entitled to qualified immunity. However, the egregious nature of the officers' actions in injuring Redding is even more apparent when considering other evidence before the district court. This evidence included the preliminary report and deposition testimony of Melvin L. Tucker, who had served as

14

chief of police in four cities during a 25-year career in law enforcement[3] and had worked as a special agent for the Federal Bureau of Investigation.

After reviewing the evidence in this case, including the video recording from Trooper Boulware's patrol car camera, Tucker concluded that the officers' use of force against Redding was unreasonable, and that "properly trained police officers would not have used the same level of force if confronted with the same or similar circumstances." Tucker observed that Redding, a 67-year-old woman, posed no immediate threat to the officers' safety and was not attempting to evade arrest by flight. In Tucker's opinion, informed by his law enforcement experience involving the use of force, "[t]o use a takedown maneuver to place a [67-year-old] female on the ground and then to sit on her lower back for several minutes while awaiting for another officer to pull her arms behind her back to handcuff her . . . are not actions that other reasonable officers would have

---

[3] Tucker served as chief of police for the cities of Tallahassee, Florida; Asheville, North Carolina; Hickory, North Carolina; and Morristown, Tennessee. Tucker has written numerous published articles concerning police use of force, has provided training to hundreds of law enforcement officers on the legal and professional standards governing police use of force, and has served as an expert witness, on behalf of plaintiffs and defendants, on many legal matters relating to police practices.

15

taken under the same or similar circumstances."[4]  Yet, without explanation, the majority fails to acknowledge this evidence concerning proper police tactics under these circumstances.

The majority also fails, without explanation, to apply this Court's four-factor test for determining whether an application of force was unreasonable and excessive.  Under this approach, as set forth by the district court, a reviewing court must examine (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; (3) "whether the suspect is actively resisting arrest or attempting to evade arrest by flight"; and (4) the extent of the plaintiff's injury.  Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003) (quoting Graham, 490 U.S. at 396); see also Wilson v. Flynn, 429 F.3d 465, 468 (4th Cir. 2005) (applying Buchanan factors); Turmon v. Jordan, 405 F.3d 202, 206 (4th Cir. 2005) (same).  Applying these factors, I would conclude that while the third factor weighs in favor of the officers, the remaining factors, and the factors as a whole, favor Redding.

---

[4] Tucker further elaborated on this conclusion in his deposition testimony, stating "to use an arm bar take-down and hold her down and handcuffing her with her hands behind her back is certainly not the minimum level of force that could have been used."

16

Instead of employing this analytical framework, the majority merely concludes summarily that "the officers used such force as was necessary to handcuff her, and no more." (Maj. slip op. at 10.) In my view, this conclusion is erroneous because, as an initial matter, the conclusion is not grounded in the facts of the case.

Further undermining the majority's position is Trooper Boulware's unequivocal statement during his deposition that "[t]here was no reason to break [Redding's] arm to make an arrest." Thus, while the majority concludes that the breaking of Redding's arm was "necessary to effect the arrest" (Maj. slip op. at 11), Trooper Boulware himself, as well as a former police chief with 25 years of law enforcement experience, reached the opposite conclusion. So would I, in keeping with our duty to view the facts in the light most favorable to Redding on summary judgment.

Simply put, the officers' conduct was objectively unreasonable in the context of the enforcement of traffic regulations. Redding, a 67-year old woman who was resisting arrest but did not pose a threat to the officers' safety and was not attempting to flee, was thrown to the pavement and forcibly placed in handcuffs, when it was apparent to at least one of the officers that doing so would break her arm. Thus, I would

17

conclude that the officers' use of force against Redding was excessive.

Although the majority did not reach the second step of the qualified immunity analysis, I would conclude that the officers' use of excessive force in this case violated Redding's "clearly established constitutional rights." Government officials are entitled to qualified immunity as a matter of law so long as they have not violated "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Torchinsky v. Siwinski, 942 F.2d 257, 261 (4th Cir. 1991) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Saucier v. Katz, 533 U.S. 194, 202 (2001). Although "the contours of the right [at issue] must be specifically clear," Anderson v. Creighton, 483 U.S. 635, 640 (1987), there is no requirement that the conduct involved in this specific fact pattern have been found previously to violate an individual's rights. See Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992) ("The fact that an exact right allegedly violated has not earlier been specifically recognized by any court does not prevent a determination that it was nevertheless 'clearly established' for qualified immunity purposes.").

The right not to have one's arm fractured when being placed into handcuffs under the circumstances presented here is "manifestly included within more general applications of the

18

core constitutional principle invoked," id., namely, the right to be free from the use of excessive and unreasonable police force. See Kane v. Hargis, 987 F.2d 1005, 1008 (4th Cir. 1993) (discussing the use of unreasonable police force, and observing that "[i]t would have been 'apparent' to a reasonable officer in [defendant's] position that, after he had pinned to the ground a woman half his size and the woman did not pose a threat to him, it was unreasonable to push her face into the pavement with such force that her teeth cracked."). Thus, I would conclude that the officers' use of excessive force in arresting Redding violated her clearly established constitutional rights, which the officers should have known. See Torchinsky, 942 F.2d at 261. Accordingly, I would hold that Trooper Boulware and Deputy Hill were not entitled to qualified immunity as a matter of law.